

May 10, 2019

**VIA ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. David Oquendo-Robinson,*
              17-cr-00611 (*United States v. White, et al.*)

Dear Judge Torres:

      On February 14, 2019, I was appointed to represent defendant David Oquendo as substitute CJA counsel. While Mr. Oquendo's case has been pending since October 2017, due to multiple changes in counsel, no trial date has yet been set. I write in advance of the upcoming status conference on May 16, 2019 to respectfully request that, in addition to the status conference, the Court hold a bail hearing for Mr. Oquendo before or after the status conference. The Government is available for such a conference on May 16, 2019.

      On April 6, 2018, when Mr. Oquendo was represented by a previous lawyer, Judge Sweet considered a bail application for Mr. Oquendo, and denied that application, in part because Mr. Oquendo had not submitted to an interview with pretrial services. *See* Dkt. No. 126, 4/6/18 Sentencing Tr. at 14 ("I'm going to deny the application. I understand and am very sympathetic with the situation in which [Mr. Oquendo's fiancée] finds herself, but to be quite candid about it, I think if he had been interviewed, that might have changed my point of view.") Mr. Oquendo seeks the opportunity to be interviewed by Pretrial Services, and respectfully requests that this Court reconsider his bail application.

      **A.**   **Proposed Conditions of Release**

      Mr. Oquendo seeks release under the terms of a substantial bail package, which would assure his presence in court and minimize any potential risks to the community. Specifically, Mr. Oquendo proposes the following conditions of release:

    1. Release on condition that he sign a personal recognizance bond ("PRB") in the amount of $200,000 to be co-signed by three other financially responsible individuals, including his sister and his aunt.

    2. That he maintain a residence with his sister, Regina Oquendo Robinson, and her two children at their apartment in Albany, N.Y.

The Honorable Analisa Tores
May 10, 2019                                                                                                                     Page 2

   3. That travel be restricted to Albany, with the exception of visits to Manhattan for court appearances and legal visits, and visits to New Jersey to visit his fiancé and baby in the event she is not immediately able to return to Albany.

   4. That all current travel documents be surrendered and no new applications for such documents made.

   5. Electronic monitoring.

   6. Close supervision by the Office of Pretrial Services of the Southern District of New York in coordination with the Pretrial Services office for the Northern District of New York.

   7. That the defendant will seek and maintain employment.

   8. All other standard conditions of release.

**B. Discussion**

   1. Applicable Law.

There is a "fundamental tradition in this country . . . that one charged with a crime is not, in ordinary circumstances, imprisoned until after a judgment of guilt." *Bandy v. United States*, 81 S. Ct. 197, 197 (1960). Pretrial release "permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction . . . . Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (*citing Hudson v. Parker*, 156 U.S. 277, 285 (1895)). Thus, "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In keeping with this tradition, the constitutional and statutory framework for bail favors release. The Eighth Amendment to the U.S. Constitution prohibits excessive bail. U.S. Const. amend. VIII ("[e]xcessive bail shall not be required"). In addition, the Bail Reform Act requires courts to release defendants prior to trial on the "least restrictive" conditions that will reasonably assure the defendant's appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). In determining the conditions of release, courts must consider: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

The Honorable Analisa Tores
May 10, 2019                                                                                                    Page 3

      Where, as here, the bail statute imposes a presumption of detention, the defendant bears the burden of producing sufficient evidence to rebut that presumption. An accused's promise to the Court to appear and a reasonable pretrial plan to assure the accused's appearance in Court is sufficient to rebut the statutory presumption. *See United States v. Walters*, 89 F.Supp.2d 1217, 1219-22 (D. Kan. 2000); *see also United States v. Huckabay*, 707 F.Supp. 35, 40 (D. Me. 1989); *United States v. Clark*, 791 F.Supp. 259, 261 (E.D. Wash. 1992).

      Once the accused presents evidence rebutting the statutory presumption, the burden is on the Government to establish the basis for detention. *United States v. Martir*, 782 F.2d 1141 (2d Cir. 1986); *United States v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985). Accordingly, the Government must prove by clear and convincing evidence that no conditions of release will reasonably assure the safety of the community. 18 U.S.C. § 3142(f). In addition, the Government must prove by a preponderance of the evidence that no conditions of release will reasonably assure the appearance of the accused as required. *United States v. Chimurenga*, 760 F.2d at 405. The government cannot meet that burden here.

      2.  <u>Mr. Oquendo is not a flight risk.</u>

      The Bail Reform Act requires the Court to evaluate whether a person is a flight risk by considering, among other factors, a person's family ties, community ties, and employment. 18 U.S.C. § 3142(g). Mr. Oquendo has strong family ties, a close community in Albany far from the neighborhood where the alleged crimes took place, and a history of hard work and steady employment.

      First, Mr. Oquendo has strong family ties, which give him every incentive to appear in Court and to abide by any conditions of his pretrial release. The crimes alleged in this case principally took place in 2012 and early 2013. Mr. Oquendo was incarcerated on state charges of criminal possession of a weapon from February 2013 until February 2015, but in the nearly three intervening years between his release from custody on those state charges and his arrest for this matter, Mr. Oquendo matured and he created a stable life for himself in Albany, far from the Bronx.

      At the time of his arrest for this case, Mr. Oquendo was living with his fiancé, Ms. Leysha Cruz, in Albany, he was working two jobs to support his family,[1] and the couple was expecting a baby. Ms. Cruz gave birth to the couple's baby boy on April 19, 2018, when Mr. Oquendo was in custody. As set forth in Exhibit B, a letter from Ms. Cruz, Mr. Oquendo's son was born prematurely and has various health problems. In addition, Ms. Cruz, who is only 22 years old, has been struggling with post-partum depression. While she is currently living with relatives in New Jersey, she has gone through periods of homelessness with her infant son. Ms. Cruz has also been struggling to work, given her baby's needs and her inability to afford childcare. Mr. Oquendo seeks bail because he wants to support his family by being an active caregiver to his son to alleviate the stress and anxiety on his fiancé and so that his fiancé can

---

[1] Attached as Exhibit A are letters from Mr. Oquendo's two prior employers submitted in connection with his prior

work, and by working himself to support his family. Mr. Oquendo's fiancé and son give him a powerful incentive to appear in court and to abide by the conditions of his release.

Mr. Oquendo has additional strong ties to his community. Mr. Oquendo has a supportive extended family in Albany, including his mother, sister and aunt. Regina Oquendo Robinson, Mr. Oquendo's sister, has a close relationship with Mr. Oquendo, and he would live with her and her two young children in Albany upon release.

As set forth in the letter from Ms. Robinson, attached as Exhibit C, Ms. Robinson is the assistant general manager at a McDonald's in Albany, where Mr. Oquendo was a manager prior to his arrest. She has stated that her employer will re-hire Mr. Oquendo if he is released on conditions that permit him to reside in the Albany area. Ms. Robinson would also be one of the co-signers of his bond.[2] She would be in close proximity to Mr. Oquendo at home and at work, and would have numerous incentives to ensure that he appears for Court and abides by the terms of his pretrial release.

Because Mr. Oquendo has strong ties to his family and his community, and an immediate opportunity for gainful employment to support his family, he is not a flight risk.

> 3. <u>The Proposed Conditions Will Reasonably Assure The Safety of the Community</u>.

Mr. Oquendo has also proposed a bail package that reasonably assures that he will not be a danger to the community. As explained above, "in determining whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community," the Court should take into account, among other things, (1) the weight of the evidence against the person, and (2) the history and characteristics of the person. 18 U.S.C. § 3142(g).

While the charges against Mr. Oquendo are serious, including charges of racketeering and an attempted murder by firearm in violation of 18 U.S.C. 1959(a)(3), the evidence against Mr. Oquendo is tenuous, and is comprised primarily of cooperator testimony. The alleged attempted murder, the most serious of the allegations against Mr. Oquendo, is alleged to have taken place on February 4, 2013, nearly five years prior to Mr. Oquendo's arrest in this case. Discovery provided by the Government shows that an eyewitness positively identified another individual, Rashon Martin, as the shooter, and not Mr. Oquendo. This eyewitness testified in the grand jury that he was very close to where the shooter was standing, he knew Mr. Martin well because they used to live on the same floor, and he recognized him. Specifically, the witness stated: "I could tell it was him [Martin], he looked at me dead in the face." Mr. Martin was later prosecuted and pleaded guilty to a reduced charge in connection with the incident with which Mr. Oquendo is charged. Additionally, based on discovery reviewed to date, there is no ballistics or other evidence connecting Mr. Oquendo to the gun used in the shooting, and no video evidence linking Mr. Oquendo to the shooting. Given the arrest, prosecution, and guilty

---

[2] Mr. Oquendo's aunt and his mother would also be willing to co-sign the bond.

The Honorable Analisa Tores  
May 10, 2019   Page 5

plea of Mr. Martin and the eyewitness testimony identifying Mr. Martin as the perpetrator of the attempted murder, the evidence against Mr. Oquendo is weak, which weighs in favor of pretrial release.

      In addition, the events giving rise to the charges against Mr. Oquendo occurred over six years ago when Mr. Oquendo was living in the Millbrook project in the Bronx. Mr. Oquendo relocated his life to Albany after these events took place, and maintained steady employment and a stable relationship in the nearly three years leading up to his arrest. Under the proposed conditions, Mr. Oquendo would live and be supervised in Albany, far from the Bronx, and he would be surrounded by supportive family members, including his sister, who is gainfully employed and would also be his supervisor at work. Most importantly, Mr. Oquendo has become a father, and has a strong incentive to avoid any situations that would prevent him from playing a meaningful role in his son's life. Since his incarceration, Mr. Oquendo has also completed anger management training, a course on money management, and a critical thinking course. In light of the changes in Mr. Oquendo's personal circumstances since the charged offenses, the proposed conditions of close supervision and electronic monitoring would reasonably assure the safety of the community.

      **C.  Conclusion**

      For the reasons set forth above, the proposed conditions of release would reasonably assure the safety of the community and the defendant's appearance at future proceedings. We request the opportunity to address any of the Court's questions or concerns at a bail hearing on May 16, 2019, or at the Court's earliest convenience. We would also request that defense counsel be present at any interview with pretrial services. Thank you for your attention to this matter.

      Sincerely,

      /s/ Kristen M. Santillo  
      Kristen M. Santillo

# Exhibit A

TILLAIN HILL

GENERAL MANAGER

██████████████████

██████████████████

I'm the general manager for Bruegger's Bakery in Albany. David was my Assistant manager for almost a year and has great potential with this company. Very personalable with the guest that come in daily and his co-workers. He is also a most dependable team player. David has always displayed a high degree of responsibility, professionalism, and integrity. If you need further information, I can be contacted at ████████████.

Sincerely,

Tillain Hill

To whom it may concern,

I am the General Manager of ███████████ McDonald's, located in Albany New York. David Oquendo-Robinson worked as a shift manager for me for over a year. He started back on September 6th 2016. I say David almost every single day since the day he stated working for me, having conversation about work, as well as just life situations. David was always a very mature man, handled tough life situations very impressively. He always had two jobs the whole time I knew him. Never was late for work, never called out of work, always stayed late, and came in on his days off whatever the job needed David was there.

I am very familiar with David's family as well. He has a very strong support system in Albany. His cousin and brother both look up to him and respect him to the fullest, his sister as well. David is defiantly the back bone on his family.

David future baby mother also works for me as a shift manager. I have known her for over three years and is a very good influence in David's life. Has the same work ethic as David does, they are very good for each other. She became pregnant right before David was arrested. Leaving Leysha, David's baby mother, devastated. This will be the first baby for the both of them, neither of them know what it's like to take care of a baby. That is why both of them need to be there to go through the baby's life journey together. David will be an amazing father to this child, he has such a big heart and will be a great role model for the child.

Please if you have any questions please don't hesitate to call me at any time. I will glady answer any questions you have.

Matthew Mead

work Number ███
cell Number ███

# Exhibit B

From: Leysha Quiñones ███████████
Date: Thu, Mar 28, 2019 at 5:35 PM
Subject: Letter
To: <███████████████████>

To: OQUENDO-ROBINSON, DAVID L

# Letter
Mar 27, 2019, 7:01 PM

Letter
Feb 18, 2019, 5:48 PM
To Whom It May Concern : My name is Leysha Quiñones Cruz I am David Oquendo Robinson's fiancé. We had our first child ███████ He was incarcerated away from his family October 11, 2017. My entire pregnancy was complicated plus the fact that David couldn't be here for me made things worse for me. I had the baby almost 2 months early. I was under a lot of stress having to do everything alone since my only family here was David. I got sick and was rushed to the hospital and a few hours later I had a seizure and almost died with my baby. Thank God he was there for me to help me get through that. After the seizure I was rushed to an emergency C section so at least my baby would be safe and the doctors could treat me to see what was wrong. I was hospitalized for 2 weeks and a lot happened between that time. I couldn't take care of my baby I had to stay with my cousin so she can help me with my new born baby. It was a lot that wouldn't have happened if David was here. He was always taking care of me and the house. We were so excited to have our first baby and start a new chapter in our lives. This has been hard for him but it has been the worse for me. A few months ago me and our child became homeless due to personal problems I was having. I am currently staying with my cousin on ███████ ███████████. I'm doing my best on getting things back on track for my family. I really need David's help even if it's just for a little bit of time. I have postpartum depression since I could remember. Especially after everything I been through. I'm 22 years old my birth date is ███████. I need for you to really understand that Me and his son need him. At least onto his time is set up or anything. I need him more than ever. He'll be home with me and his son. Even if he can't leave the house. Our son has eczema , asthma and sickle cells it's his first baby and we need him here at least to help me watch for the baby while I work. I haven't been able to work with all the health problems our baby has. It's been a lot for me and it could all be fixed if he was just given a chance to be home and continue to do what he's been doing for the past few years. He's such a good man and so smart and loving. He's been through so much also and he's been doing so good so far. I just ask for this to be over and have him home again. So his son can meet him. We love him so much. And he loves us just as much and love changes people. He's not the person your looking for he's such a different person he has a family to look after and we just ask for one chance for our family. I need my happiness back in my life . My number is ███████. My e mail is ███████████ I can be contacted at any time and wish to hear back. I appreciate for at least reading this letter it means a lot to us. Sincerely , Leysha Q.C.

# Exhibit C

**From: Regina Robinson** ███████████
Date: Wed, Apr 17, 2019 at 2:23 PM
Subject: David oquendo robinson
To: ███████████

To whom it may concern i,Regina Oquendo Robinson who is the sister of David Oquendo Robinson to notify you that if David was offered bail he will be able to reside in my residence @ ███████████████████████ with me and my two daughters. Also i am the assistant general manager at the mcdonald which is directly across the street from where i reside and he will be able to be employed there with me for as long as he is bailed. i would love the have him so if you have any further questions or concern please do not hesitate to call me @ ████████ .